MUDD (CRIPPS v.). See Case No. 3,391.

MUDD (FRERE v.). See Case No. 5,107.

MUGGRIDGE (PARKER v.). See Case No. 10,743.

MUHLENBRINK (UNITED STATES v.). See Case No. 15,831.

MUIR, In re. See Case No. 13,196.

---

## Case No. 9,901.

### MUIR et al. v. The BRISK et al.

[4 Ben 252.] [1]

District Court, E. D. New York. June, 1870.

SHIPPING—POSSESSION — MASTER—LIEN—LOADING VESSEL WHILE IN CUSTODY—BONDING AFTER DECREE—APPEAL.

1. The owners of a British vessel filed a libel, to recover possession of her, against the master who claimed to have a lien upon her, under the English law. and to hold her by reason of such lien; and, after the vessel had been seized by the master, under the process in the action, the owners, through a new master whom they had appointed. chartered the vessel. and by consent of the marshal, but without the permission of the court, began to load the vessel under the charter: Held, that the fact. that the master claimed a lien on the vessel. under the English law, furnished no ground for his refusal to deliver the vessel to her owners.

2. A court of admiralty has the right to decline to entertain jurisdiction, where all the parties are foreigners resident abroad.

3. The act of the owners, in interfering as they had done with the vessel, while in the custody of the law, would well justify the court in declining to exercise jurisdiction in the premises, but as that had been done with the consent of the marshal, and the rights of the defendant could be otherwise protected, the court would decree that the libellants recover possession of the vessel without costs. on their paying into court the inward freight collected by them, less the usual inward charges. including unloading and crew's wages, as security for the payment of any sum found due to the master. in an action to be brought by him within twenty days, if he was so advised.

---

[1] [Reported by Hon. William Cranch. Chief Judge.]

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

4. After such decree was entered, the respondent gave notice of appeal, but took no steps to perfect his appeal for several days, and the owners applied to the court for leave to bond the vessel: *Held*, that the court would not grant leave to bond the vessel, but would direct that the decree be executed, unless the respondent perfected his appeal, and procured the cause to be transmitted to the appellate court within two days.

In admiralty.

Emerson, Goodrich & Wheeler, for libellants.

Beebe, Donohue & Cooke, for respondent.

BENEDICT, District Judge. This is an action brought by the libellants William Muir and others, claiming to be the sole and only owners of the British brig Brisk, to obtain possession of that vessel from the defendant, Alfred Morine, who claims to hold the vessel as the master thereof, and denies the right of the libellants to remove him. The defendant by his answer puts the libellants to their proof of ownership, and sets up in opposition to the demand of the libellants, the fact that he has a claim against the owners for wages and advances as master, which the libellants have not offered to pay, and for which by the law of England, he has a lien upon the vessel and her freight, by reason of which he insists that this court should refuse the decree prayed for by the libellants.

The evidence of ownership introduced by the libellants, I consider to be sufficient to entitle them to the relief prayed for; certainly, in the absence of any countervailing evidence, or any suggestion that any other parties are the owners of this vessel. As to the fact that the defendant has an unpaid demand for wages and disbursements, for which the law of England gives him a lien upon the ship and freight, it is only necessary to say that, assuming the facts to be as set up, they afford no reason for refusing to the owners the possession of the ship, to which they are entitled as being the sole owners. A lien for wages and disbursements cannot give to the master a legal right to the possession of the vessel, as against his owners. Cases might be imagined, disclosing such equities and presenting such features of hardship in the dealings of owners with their master, as would justify a court of admiralty in refusing the aid of its decree in favor of owners who refuse to do equity, but this case presents no such features. These owners are not shown to be irresponsible—they offer to give the defendant security to pay any sum which may be due him, while they deny that anything is due. It would follow therefore that the libellants, upon such a state of facts, must be entitled to the decree, which they seek by this action to obtain. But a circumstance has been proved in the case which, considering that the vessel in question is foreign, and all the parties to the action foreigners residing in a foreign country, makes it proper in my opinion for this court, to decline to exercise jurisdiction in this case, except upon the condition hereafter to be stated.

The right of the court of admiralty, to decline to entertain jurisdiction, when all the parties are foreigners residing abroad, has been often declared. The Martin, 4 C. Rob. Adm. 293; Davis v. Leslie [Case No. 3,639]; Coote, Adm. 47.

The circumstance to which I allude is this, that since the seizure of the vessel by the marshal under the process issued in this action, at the instance of the libellants, and while the vessel was thus in the custody of the law, awaiting the determination of this court, the libellants without any permission from the court, have caused the vessel to be loaded with a cargo shipped for a foreign voyage, and she is now nearly full of cargo belonging to third parties, laden under a charter party executed by one Banks, who is the master whom the libellants seek to place in command of the vessel instead of the defendant.

This extraordinary mode of dealing with a vessel in custody of the law, on the part of foreigners who were seeking the decree of this court to put them in possession of the vessel, would well justify the court in exercising its privilege to decline jurisdiction in the premises.

No reason is seen why the aid of the court should be invoked by parties, who by their acts show that they do not consider any decree of the court necessary, to enable them to assume possession and control of the vessel. But it also appears, and the statement has caused me surprise, that the action of the libellants in loading their ship was with the knowledge and consent of the marshal. For this reason, therefore, and because the result of this action of the officer of the court, might be to work serious inconvenience and loss, if no decree were here pronounced, and inasmuch as all the rights of the defendant can be protected by making the payment of the freight into court a condition of exercising jurisdiction, that course will be adopted instead of absolutely declining to render a decree. If, then, the libellants deposit in the registry of the court the amount of the inward freight by them collected, less only the usual inward charges, including unloading and crew's wages, such freight to remain subject to the order of the court, as security for any sum which the defendant may recover against the owners of this vessel or said freight, in an action, to be brought within twenty days, in case he be so advised, the court will entertain jurisdiction, and a decree be entered in favor of the libellants without costs. If such freight be not so deposited within forty-eight hours, after notice of this determination, a decree will be entered dismissing the libel.

Upon the entry of the decree above mentioned, the defendant at once filed and served a notice of intention to appeal in the usual

form, but for five days thereafter took no steps to perfect his appeal and gave no security. Upon these facts, and affidavits showing that the detention of the vessel would involve serious loss, the libellants moved for a release of the vessel on bail.

BENEDICT, District Judge. No reason is assigned for the omission to make this application at an earlier stage in the cause. One reason given for the application at this time, is that she is under a charter and loaded and ready for sea. This charter and loading of the vessel has been before alluded to in disposing of the cause upon the merits, and it is sufficient to say here, that the embarrassment growing out of the charter and loading of this vessel was caused by the libellants themselves, when they assumed to charter and load a vessel while in custody of the law, and can not be considered as one of the ordinary incidents attending a possessory action. Under the circumstances, the position of the vessel, arising from her charter, does not appeal very strongly to the consideration of the court. Furthermore an order to release a vessel on bail, is an interlocutory order made pending the determination of the court upon the issues raised, to avoid the expense and loss incident to delay in the determination of those issues. When therefore the court has made its decree, the reason for making such an order no longer exists, and it is not seen what form of security could well be taken from the libellants here, in an action like the present, after an absolute decree made in their favor, which it is the duty of the court to see duly executed. The delay sought to be protected against, is not delay in this court, but in the appellate court.

I do not say that a state of facts might not be presented, which would make it incumbent upon this court, to direct the release of a vessel, held in a possessory action, even after final decree in the cause, and before an appeal; but in the present case, the delay sought to be protected against, is not delay in this court. but anticipated delay in the appellate court; for notice of appeal has been filed, and the appeal can be perfected without delay, and the application can at once be made to the appellate court. The order which I propose to make, will enable relief to be obtained more speedily by an application to that court than by the present motion here, and, therefore, I do not consider the interposition of this court, in the manner proposed, to be necessary. An order can be made to prevent further delay in this court, and insure the transmission of the cause to the appellate court without further delay, by shortening the time usually allowed for perfecting the appeal. It is accordingly directed that the decree of this court be executed, unless the defendant perfect his appeal, and procure the cause to be transmitted to the circuit court. within two days from the making of this order.